**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GERALD T. HAILEY, #253749,

        Petitioner,

v.
                                          Case No: 2:06-CV-10577

KURT JONES,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Gerald T. Hailey, a state inmate currently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for writ of habeas corpus. Petitioner challenges his convictions for armed robbery, Mich. Comp. Laws § 750.529, possession of a firearm by a person convicted of a felony, Mich. Comp. Laws § 50.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. He was sentenced to eighteen to thirty years imprisonment for his armed robbery conviction, two to five years in prison for the felon in possession of a firearm conviction, and two years imprisonment for his felony-firearm conviction. Petitioner raises the sole issue of whether there was sufficient evidence to sustain his conviction for armed robbery. For the reasons stated below, the court will deny Petitioner's request for habeas relief.

**I. BACKGROUND**

Petitioner's conviction arose out of events which occurred on September 10, 2000. According to the combined testimony of Tyniecha Thompson and Derrick Hill,

they and their three children, were at their home when "Major" Shepherd and Petitioner arrived at their house and knocked on the door. Thompson answered the door. She knew Shepherd and had seen Petitioner in the neighborhood. Petitioner and Shepherd were invited into the house; and Thompson let Hill know who was visiting. Almost immediately, Petitioner pulled out a gun and pointed it at Thompson's back. Petitioner directed Thompson to get her children and go to one of the bedrooms, which she proceeded to do. In that same bedroom Shepherd was present; and he was pointing a gun at Hill. Shepherd demanded that Hill give him money, a men's gold chain necklace that was hanging on the door and anything else of value. Petitioner continued to stand in front of Thompson and her children while holding them at gun point.

    Hill, who was dressed only in his boxer shorts, tossed his pants and a pair of shorts to Shepherd, as Hill recalled that there was some money in the pockets. Hill also testified that his gold chain was taken from its location in the room by the Petitioner.[1] Because it appeared to Hill that Shepherd was planning to kill him, Hill asked that his kids not be forced to see their father murdered. Shepherd allowed the children to hug and kiss Hill before they left the bedroom with Thompson and Petitioner. As they were leaving the bedroom, Hill reached for a gun which was under his mattress, and went after the Petitioner. During their scuffle, Hill shot Petitioner in the head and proceeded to go after Shepherd. Hill was unsure if he shot Shepherd, but during this exchange of gun shots amongst Hill, Shepherd and the Petitioner, Hill was shot in the upper thigh.

---

[1] Ms. Thompson testified that Shepherd took the men's gold chain, which is the factual basis for Petitioner's argument that his actions on the day in question did not meet the elements required for an armed robbery conviction. Details relative to this argument are set forth below.

Thompson testified that she had been shot three times by Shepherd striking her neck, and shoulder/collar bone area. She saw Shepherd subsequently leave the home. An ambulance later came to the house taking Hill, Thompson and Petitioner to the hospital. Each of the parties survived their gunshot wounds.

Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals arguing only that there was insufficient evidence to sustain an armed robbery conviction. On August 16, 2005 the Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Hailey,* No. 254407, 2005 WL 1966558 (Mich. Ct. App. Aug. 16, 2005) (per curiam). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. The court denied Petitioner's application, which raised the same issue as that which was presented before the Court of Appeals. *People v. Hailey,* 474 Mich. 942; 706 N.W.2d 19 (Table) (Mich. Nov. 29, 2005).

On February 10, 2006, Petitioner filed the application for writ of habeas corpus which is presently before the court.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions, and states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE CLAIM

Petitioner contends that there was insufficient evidence to convict him of armed robbery because his actions on September 10, 2000 did not include one of the elements of an armed robbery under Michigan law. Armed robbery is defined as the "felonious taking of property from the victim's presence or person." Mich. Comp. Laws. § 750.529. It is obvious that Hill's gold chain was taken from his immediate presence and that of Thompson as well. However, there is conflicting testimony as to whether Petitioner or Shepherd was the individual who physically took the chain from where it

4

was hanging and kept it within his possession. Thompson apparently thought it was Shepherd. The pertinent testimony of Thompson is as follows:

> Q: Now when you say chain, you're talking about a necklace, a man's necklace?
> A: Yes.
> Q: Was it gold or silver?
> A: It was gold.
> Q: And it's hooked on a doorknob?
> A: Yes.
> Q: And you say "he." Who is it that's taking things off of the person of your boyfriend?
> A: Major [Mr. Shepherd].
> Q: And during the time that's happening, what is this man Mr. Hailey doing?
> A: He's still got the gun to me and my kids.
> Q: And then you said that Major [Mr. Shepherd] does something with the man's necklace, the chain?
> A: Yes.
> Q: And what does he do with the chain?
> A: I think he puts it in his pocket. I'm not for sure.
> Q: Saw him grab it off the doorknob?
> A: Yes.
> Q: So it got into his possession?
> A: Yes.
>
> * * *
>
> Q: And Mr. Major [Shepherd] then takes the chain?
> A: Yes.
>
> * * *
>
> Q: In your presence Mr. Hill had his - you saw him toss his pants?
> A: Yes.
> Q: The chain?
> A. They picked the chain up off the door, yes.
> Q: The chain was taken?
> A: Yes.
>
> * * *
>
> Q: It would be fair to say that it was Major Shepherd that grabbed the necklace off the door?

5

> A: Yes, I guess so.
> Q: Did you see that?
> A: I guess so, yeah.
> Q: Okay. That's who you saw do that, correct, ma'am?
> A: Yes.

(Trial Transcript, 2/17/04, at 40-42, 65, 73)

Hill said that it was Petitioner Hailey who "snatched" the chain. The pertinent testimony of Hill is as follows:

> A: . . . Gerald [Petitioner] was walking. He had walked out of the room. And as he walked out of the room, he seen behind my door I had – my door wasn't shut but it was like cocked, you know, not halfway open but it was not all the way back and I had a chain on there. I had a chain with a Tazmanian Devil on it. I didn't have it anymore, but I had a chain with a Tazmanian Devil on it and it had a whole lot of diamonds and stuff on it. And that young man there [Petitioner] snatched it off the door.
> Q: And that was the door that is to the edge or the area of the bedroom?
> A: Right. Right.
> Q: And so this is a male necklace?
> A: Yes, that was one of them.
> Q: So he took the chain?
> A: Yes.
> Q: What happened then?
> A: Well they – well after he took the chain, he was back in the room and I was looking at Major [Shepherd] . . .
>
> \* \* \*
>
> Q: What happened then?
> A: Like I said, I gave him [Shepherd] my shorts and then Gerald [Petitioner], like I say, got my chain off the door.
> Q: Okay.
> A: And then after he got my chain off the door, he came back into the room. Yeah, he came back in the room and he was standing. As I said, he was walking around then he came back in the room after he got the chain . . .
>
> \* \* \*

6

> Q: And where is it that Mr. Hailey [Petitioner] had to go to get your chain with the Tazmanian devil on it?
> A: The door here. It's on the door here going out the doorway. It was on the door.

(Trial Transcript, 2/17/04, at 198-200, 205)

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F.Supp.2d 974, 985 (E.D.Mich. 2002) (internal citations omitted). The habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F.Supp.2d 651, 661-62 (E.D. Mich. 2003).

Therefore, the scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

Petitioner, in presenting his argument on this point mentioned Thompson's testimony that identified Shepherd, and argued that neither she nor either of the two

7

children "testified that Hailey took anything from them." (Pet. p. 5). Petitioner, however, appears to utterly ignore that fact that Derrick Hill clearly identified Hailey, as noted above, and said he actually saw Petitioner "snatch" the chain from the doorknob. To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003).

Under Michigan law, the elements of armed robbery are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. See *Lovely v. Jackson,* 337 F.Supp.2d 969, 977 (E.D. Mich. 2004) (citing Mich. Comp. Laws § 750.529); *People v. Allen,* 505 N.W.2d 869 (Mich. Ct. App. 1993). Apparently, Petitioner relies on the fact that Thompson testified that it was Shepherd who stole the gold chain in order to argue that there was "insufficient evidence" to prove that Petitioner met the second prong of an armed robbery offense in the state of Michigan, i.e., feloniously taking property from the victim's person or presence. The Michigan Court of Appeals reviewed this claim and concluded:

> One of the victims testified that defendant took his necklace that was hanging on the bedroom door while defendant and Shepard held the family at gunpoint. This testimony, when viewed in a light more favorable to the prosecution, is sufficient evidence that defendant committed a "felonious taking of property from the victim's presence.

*People v. Hailey,* No. 254407, 2005 WL 1966558, *1 (Mich. Ct. App. Aug. 16, 2005) (per curiam). In this case, the jury may have chosen to credit Hill's testimony and to

discount or not believe Thompson's version of events relative to whether Petitioner or Shepherd took the gold chain. If such were the case, this court must defer to the jury's finding beyond a reasonable doubt that Hill was more credible. *See Matthews,* 319 F.3d at 788-89.

In any event, because Shepherd and Petitioner were acting in concert, it matters not whether the jury might have credited Hill over Thompson. The Michigan Court of Appeals concluded that there was sufficient evidence to convict Petitioner based on an aiding and abetting theory:

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v. Carines*, 460 Mich. 750, 768; 597 NW2d 130 (1999).
>
> Applying these legal principles to the instant case, there is also sufficient evidence to support defendant's conviction on an aiding and abetting theory. Defendant provided "aid and encouragement" to the robbery by taking control over four members of the family they were robbing. The evidence shows that defendant held a mother and her three children at gunpoint while Shepherd took money from the father's pants. One of the children testified that defendant ordered the children to go upstairs so that defendant and Shepherd could shoot the father out of view of the children. When the men lost control of the situation, Shepherd shot the mother three times before escaping through the front door of the house. Defendant facilitated Shepherd's escape when he tussled with the father.
>
> The evidence also shows that defendant had knowledge of what his partner was doing. Specifically, defendant and Shepherd showed their weapons shortly after arriving at the house, indicating that defendant came to the house armed with a gun. Further, one of the children testified that defendant did not say anything while they were in the bedroom, but recalled that defendant was paying attention to Shepherd and the father during the robbery. The mother and two of her children all testified that Shepherd spoke in a voice loud enough for everybody in the room to hear

9

> what was being said. Indeed, the bedroom where the robbery occurred
> was approximately 11 1/2 by 7 feet. Even the two youngest children's
> testimony reveals that they had a general understanding of what occurred.
> Based on the witnesses' testimony, everybody in the room was aware of
> what Shepherd was doing, including defendant.

*Hailey*, 2005 WL 1966558 at * 2. Given the testimony adduced at trial, the court finds that the Michigan Court of Appeals' decision is not an unreasonable application of law. The court easily rejects Petitioner's argument that the evidence could support only a conclusion that he was "merely present," but did not aid or abet the actions of Shephard.

Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence because of contradictory testimony is utterly without merit. Habeas relief is not warranted.

## B. CERTIFICATE OF APPEALABILITY

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997)), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that

point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Specifically, reasonable jurists would not disagree with the court's determination that the state court's resolution of Petitioner's sufficiency of the evidence claim was an unreasonable application of Supreme Court jurisprudence. Therefore, the court denies a certificate of appealability.

### IV. CONCLUSION

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Doc. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 26, 2007, by electronic and/or ordinary mail.

                                           s/Lisa Wagner
                                           Case Manager and Deputy Clerk
                                           (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\06-10577.HAILEY.habeas.KA.2.wpd